IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ANTHONY J. ROMERO,

       **Plaintiff,**

vs.                                                                                                **Civil No. 03-1056 RLP**

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**

       **Defendant.**

## MEMORANDUM OPINION AND ORDER

**I.    Background**

This matter comes before the court on Plaintiff's Motion to Reverse or Remand Administrative Agency Decision. (Docket No.9).

Plaintiff, a high school graduate born on September 12, 1953, sustained head, neck and back injuries in a job related accident on February 15, 1991. (Tr.38, 51, 54, 98-100, 192-193). He never returned to work. He was last insured for benefits as of December 1996. (Tr. 54).

Plaintiff filed an application for Disability Income benefits on March 11, 1999. (Tr. 38). His application was denied by an Administrative Law Judge ["ALJ" herein] on April 27, 2000. (Tr. 10-19). The Appeals Council declined to review the ALJ's decision. (Tr. 6-7). Plaintiff appealed to the District Court of New Mexico, which remanded the claim to the Commissioner of Social Security for additional proceedings.[1]  (Tr. 347-357).

---

[1] In its Order of Remand, the District Court instructed the Commissioner of Social Security to (1) reassess Plaintiff's credibility, (2) reassess Plaintiff's residual functional capacity, giving consideration to a functional capacities evaluation conducted on October 3, 1991, (3) include a function - by - function analysis of Plaintiff's exertional capabilities and (4) continue evaluation at step five of the sequential

A second administrative hearing was conducted on April 23, 2003. (Tr. 288-338). The same ALJ again denied Plaintiff's claim on July 23, 2003. (Tr. 271-281). The ALJ found:

(1) Plaintiff had not engaged in substantial gainful activity since February 15, 1991 (Step 1) (Tr. 275, 280).

(2) Plaintiff suffered from osteoarthritis, a severe impairment (Step 2) (Tr. 276, 280);

(3) Plaintiff's impairment was insufficient to establish disability at step three, a finding not challenged (Tr. 280).

(4) Plaintiff was not entirely credible (Tr. 277-278).

(5) Based on the Functional Capacity Evaluation ("FCE" herein) performed in October 1991 Plaintiff could sit for 4 hours in an 8 hour day with a sit or stand option; stand for 1 hour in 8 hour day, in 10 minute intervals, walk for 4 hours in an 8 hour day, for occasional moderate distances and lift 19.5 lbs with either hand and 23.5 lbs. with both hands. (Tr. 278, referring to Tr. 120-132).

(6) Plaintiff was unable to perform his past work as a beverage delivery driver (Tr. 278, 280).

(7) Plaintiff retained the residual functional capacity ("RFC" herein) for five of six jobs identified by a vocational expert ("VE" herein): the light duty jobs of ticket taker (DOT 344.667-010), and parking lot attendant (DOT 915.473-010), and the sedentary jobs of order control clerk (DOT 245-367-026), surveillance system monitor (DOT 379.367-010) and credit authorizer (DOT 249-367-022). (Tr. 321-323).

---

evaluation process, consulting with a vocational expert if necessary. (Tr. 347).

**II.     Issues Raised on Appeal**

      A.      Whether the ALJ applied correct legal standards in evaluating Plaintiff's credibility, and whether substantial evidence supports her credibility determination.

      B.      Whether the ALJ's finding that Plaintiff could perform five specific jobs in the national economy is supported by the application of correct legal principles and substantial evidence.

      C.      Whether Plaintiff's RFC, as documented in the October 1991 Functional Capacities Evaluation accepted as accurate by the ALJ, as a matter of law precludes the ability to engage in substantial gainful activity.

**III.    Scope of Review**

I review the ALJ's decision only to determine whether her factual findings are supported by substantial evidence and whether she applied the correct legal standards. *See O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir.1994). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (quotations omitted). In making the substantial evidence determination, I neither reweigh the evidence nor substitute my judgment for that of the ALJ. *See Thompson*, 987 F.2d at 1487. If the Commissioner's factual findings are supported by substantial evidence, they must be given conclusive effect. 42 U.S.C. §405(g). Substantial evidence is that which a reasonable person might find sufficient to support a particular conclusion. *Richardson v. Perales*, 402 U.S. 389, 401-402 (1971). Further, evidence must be more than a scintilla, Id., at 403, but may be less than a preponderance. *Flint v. Sullivan*, 951 F.2d 264, 266 (10th Cir. 1991).

**IV.    Discussion**

      **A.     Credibility**

Credibility determinations are peculiarly the province of the finder of fact and will not be upset when supported by substantial evidence. *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774,

777(10th Cir.1990) *cited in Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995).  "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.' " *Huston v. Bowen*, 838 F.2d 1135, 1133 (footnote omitted (10th Cir. 1988). The ALJ must "articulate specific reasons for questioning a claimant's credibility" where subjective pain testimony is critical.  *Kepler v. Chater*, 68 F.3d at 391 (internal quotations omitted).  Failure to make credibility findings regarding critical testimony fatally undermines the [Commissioner's] argument that there is substantial evidence adequate to support [her] conclusion that claimant is not under a disability." *Id*. (internal quotations omitted).

I find that many of the bases upon which the ALJ discounted Plaintiff's credibility have tenuous to no support in the record, are based on a misreading of the record or are irrelevant.

> - - *Plaintiff's testified that at most he could lift 10 pounds, which was not supported by the FCE of October 1991.*

The ALJ accurately noted that the October 1991 FCE did not list a lifting tolerance. Nonetheless she stated that the FCE indicated that Plaintiff was "consistently" able to lift 19.5 lbs. with either hand and 23.5 lbs. with both hands. (Tr. 276, 278).  This is a misreading of the findings in the FCE.  "A claimant's RFC to do work is what the claimant is still functionally capable of doing on a regular and continuing basis, despite his impairments:  the claimant's maximum sustained work capability." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988). As demonstrated in Appendix A, Plaintiff's ability to lift was measured at various lifting heights, using progressively heavier weights, with fewer than10 repetitions at each height tested.  Testing was terminated after a very limited period of time, at or prior to the weight tolerances the ALJ  listed, due to Plaintiff's subjective complaints of pain.  Objective signs were charted by the evaluator, but there is no evidence in the record as to the meaning of these signs, that is, whether they support or do not support Plaintiff's

4

subjective complaints.

> *- - Plaintiff states he only took over the counter medication because liver problems prevented him from taking prescription medication.*

At his April 2000 hearing, Plaintiff testified that he had liver and kidney damage from pain medication, and took Salsalate[2] (a prescription medication), aspirin and over-the-counter medication for pain control. (Tr. 249-250). At his April 2003 hearing, Plaintiff testified that testing in 1993 or 1994 indicated that he had liver damage, and that his family doctor advised him to get off pain medication. He added that his liver had improved, but that he only took prescription medication if absolutely necessary. (Tr. 294-295, 299).

The medical record reflects that Plaintiff's treating physician switched his pain medication from Naprosyn[3] to Disalcid (generic name Salsalate) on October 23, 1993, because of abnormal liver function studies, apparently due to obesity related fatty liver infiltrates. (Tr. 146, 168-169). In 1994 and 1995 Plaintiff was prescribed Darvocet N[4] for pain control. In March 1997, he was prescribed Ibuprofen 800 mg and Cyclobenzaprine[5] following an urgent care evaluation for back pain and spasm. (Tr. 224). His liver function had returned to normal as of January 2003, when he was again

---

[2]A nonsteroidal anti-inflammatory drug used to relieve the symptoms of rheumatoid arthritis, osteoarthritis, and other rheumatic disorders. *www.healthsquare.com/newrx/DIS1142.HTM*

[3] A nonsteroidal anti-inflammatory drug, is used to relieve the inflammation, swelling, stiffness, and joint pain associated with rheumatoid arthritis, osteoarthritis, juvenile arthritis, ankylosing spondylitis (spinal arthritis), tendinitis, bursitis, and acute gout. It can affect liver functioning. *www.healthsquare.com/newrx/nap1283.htm*

[4]A mild narcotic analgesic prescribed for the relief of mild to moderate pain. *www.healthsquare.com/newrx/dar1115.htm*

[5]A muscle relaxant used for short durations in conjunction with rest and physical therapy to relieve pain, tenderness, and limitation of motion caused by muscle spasms. *www.drugs.com/cyclobenzaprine.html*

prescribed Naprosyn, to be used as needed.  (Tr. 401, 403).

> - - *Plaintiff testified that he could only sit for 30 minutes before he got muscle spasms in his back and legs.*

The FCE of October 1991 concluded that Plaintiff's sitting tolerance limited to a maximum of four hours a day in 30 minute increments.  (Tr. 120, 127)  This is consistent with Plaintiff's testimony.

> - - *At his initial hearing Plaintiff testified that he could only stand for 10 minutes and walk for 15 minutes.  At his recent hearing, he testified that the could sit or stand for 10-15 minutes and walk for 20-30 minutes.*

The FCE of October 1991 concluded that Plaintiff's standing tolerance was for 1 hour per day in 10 minute increments.  (Tr. 120, 127).  This is consistent with Plaintiff's testimony. Walking tolerance was assessed as 4 hours per day, on an occasional basis and for limited distances.[6]  (Tr. 120). This is not inconsistent with Plaintiff's testimony.

> - - *Plaintiff testified that he injured his right arm before 1991 and again in 1996, making it hard to lift, hold or pick up anything even before 1991. However, he worked at a heavy occupation that required heavy lifting.*

The ALJ misconstrued the testimony with regard to the timing of Plaintiff's complaints of difficulty using his right arm.  The ALJ asked Plaintiff how long he had experienced problems with his right arm.  Plaintiff testified that he had a shoulder injury ( torn rotator cuff)  prior to 1991, but was still able to do his job  (Tr. 268), which is consistent with medical histories he gave in 1991  (Tr. 115, 112), and with evaluations by his doctors. (See, e.g., Tr. 186).  In testimony and written documentation Plaintiff indicated that his job involved driving a delivery truck and loading and unloading materials weighing up to 100-150 lbs. *using a dolly*  (Tr. 292,  46), and that his difficulty

---

[6]I note an ability to walk "occasionally" and for "limited distances" appears to be  inconsistent with the ability to walk 4 hours in an 8 hour day.

holding things for prolonged periods, rotating his arm or doing prolonged repetitive actions arose after his 1991 injury. (Tr. 305-306, 257-258). There is simply no evidence to contradict Plaintiff's testimony that his prior shoulder injury did not prevent him from performing his work.

> *- -   Plaintiff testified that he had headaches, but in 1999 told a treating doctor that he no longer was bothered by chronic headaches.*

Plaintiff suffered a concussion on February 15, 1991. (Tr. 99). The medical record reflects that Plaintiff had persistent post traumatic headaches for several months thereafter.(Tr.107, 186, 181, 208, 213). As of May, 1992, his headaches were attributed to facet syndrome. (Tr. 106). On March 10, 1999, he advised his treating doctor that he was no longer bothered by chronic headaches, although he did express other pain complaints.[7]  (Tr. 219).

At his administrative hearing, Plaintiff testified that five or six times a week, he got "little headaches . . . not a real pounding headache, but it is just a headache that you know it's there," and that he treated these headaches with over the counter medication and/or rest. (Tr. 307). At no time has Plaintiff contended that his headaches were a factor in his disability. [8]

### B.   Vocational Testimony

The ALJ consulted a vocational source, in this case a vocational expert, as is required when a claimant has unusual limitations limitation in the ability to sit or stand.  S.S.R. 83-12, 1983 WL 31253, *3.  The VE's testimony is contradictory and confusing. She was asked to assume an individual of Plaintiff's age, education and background, who:

---

[7] At this visit his doctor diagnosed tendinitis and probable arthritis of the right shoulder and right elbow, and chronic back pain probably secondary to arthritis and aggravated by his weight. (Tr. 221).

[8] March 11, 1999, Adult Disability report:  Claimant stated that ability to work limited by chronic right arm, neck and lower back pain. (Tr. 45). In testimony, Plaintiff has ascribed his loss of function to back, neck, arm and leg pain, and to pain-related fatigue. (See e.g., 248, 293, 295-296, 302-306).

7

. . .can sit for four hours, 30 minutes at a time, could stand for one hour in 10 minute durations, could walk for four hours occasionally and with moderate distances. And, in other words, would have to have the ability to sit and stand and move around at his own option.

(Tr. 322)

The VE initially testified that with such limitations, an individual would be able to perform the light jobs of Ticket taker and Parking lot attendant, and the sedentary jobs of Order control clerk, Surveillance system monitor and Credit authorizer. (Tr. 322-323). On subsequent questioning, however the VE stated the jobs of ticket taker or parking lot attendant required more standing than walking, and that an individual with Plaintiff's standing restrictions could not perform these jobs. (Tr. 330-331). With regard to the sedentary jobs, the VE testified that these sedentary jobs involved sit/stand postures, with little walking. (Tr. 335). The ALJ found that Plaintiff's combined sit/stand tolerance is 5 hours per day. The VE testified that an individual so limited could not work at these jobs for a full 8 hour day.

> Q: If a persons total combined tolerance for sitting and standing is five hours in an eight hour day with those indicated, the sitting maximum, 30 (minutes) at a time, standing, maximum, 10 (minutes).
>
> A: Um-hum.
>
> Q: How would that effect those?
>
> A: Well, if you can only do it for five hours out of eight hours, you have a three hour gap, obviously.
>
> Q: Right.
>
> A. So, I guess that would be a question of maybe walking around, maybe taking a break . . . I don't have a good, I don't have a good answer for that.
>
> Q: Okay, So that might not allow working eight hours a day in the job if you could only - -

A:      If it's specified for five hours, that would not allow for an eight hour day.

(Tr. 335-336).

The VE's testimony establishes that Plaintiff does not have the RFC for even a limited range of sedentary work. S.S.R. 96-9p, 1996 WL 374185, *2 ("RFC is the individual's maximum remaining ability to perform sustained work on a regular and continuing basis; i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule.")

## V.     Conclusion

This case has endured two hearings and decisions from an ALJ over five years. Neither of the ALJ's decisions has been upheld, and the record supports a finding of disability. Plaintiff's severe postural limitations prevent him from performing any of the jobs identified by the VE for a full eight hour day. I therefore decline to remand the case for additional proceedings. The agency "is not entitled to adjudicate a case ad infinitum until it correctly applies the proper legal standard and gathers evidence to support its conclusion." *Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 746 (10th Cir.1993) (quotation omitted).

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Reverse is granted. The Decision of the Commissioner is reversed and this cause is remanded to the Commissioner for an award of disability benefits.

**Richard L. Puglisi**
**United States Magistrate Judge**
**(sitting by designation)**

**Appendix A**
**Summary of Lifting/Carrying Assessment from 10/91 Functional Capacities Evaluation**
**Tr. 120-132**

| Height | Hand/Arm | Weight lifted | Time/Reps | Comments | Observations |
|---|---|---|---|---|---|
| 30-63" | Right | 6.6 lb. | 2min/9reps | "A little bit of pressure in low back." | |
| | | 19.5 lb. | | Terminated w/ complaints of "Pain in mid back & right shoulder." | Pivot step, thumb up. |
| | Left | 11 lb. | 2min/9reps | "Pain in low back." | |
| | | 15 lb. | | "Pain in mid back & between shoulder blades." | |
| | | 19.5 lb. | | Terminated w/ complaints of "Too much pain in my back." | Full fist thumb up grip, pivot step and side bending to left in lumbar spine. |
| | Bilat. | 10.5 lb. | 3min/9reps | "Pressure between shoulder blades." | |
| | | 23.5 lb. | | Terminated w/ complaints of "increased pain between shoulder blades and low back." | Backward bending at 11 lbs., overhand grip, steps taken, forward bend at waist at desk level. |
| 30-18" | Right | 6.6 lb. | 2min/8reps | "Pressure in low back and mid back." | |
| | | 17.5 lb. | | Terminated w/ complaints of "My back was hurting more." | Steps taken, thumb up grip. |
| | Left | 4.2 lb. | | "My hips hurt." | |
| | | 6.6 lb. | | "Pressure in my back." | |

10

| Height | Hand/Arm | Weight lifted | Time/Reps | Comments | Observations |
|---|---|---|---|---|---|
|  |  | 17.5 lb. | 2min/8reps | Terminated w/ complaints of "I could feel the pain on the left side of my low back increase and in my hips." | Steps taken, thumb up grip. |
|  | Bilat. | 6 lb. | 2min/9reps | "Pain with bending." |  |
|  |  | 15 lb. |  | "My back hurts more." |  |
|  |  | 23.5 lb. |  | Terminated w/ complaints of "Pain increasing in my back and hips." | Overhanded grip, steps taken and forward bend at waist. |
| 18" - floor | Right | 11 lb. | 2min/9reps | "A little pressure in the low back." |  |
|  |  | 17.5 lb. |  | "Increased pressure in the low back." |  |
|  |  | 19.5 lb. |  | Terminated w/ complaints of "I could feel the pain across my low back." | Thumb up grip, steps taken, full squat at floor |
|  | Left | 11 lb. | 2min/9reps | "Pressure in low back and mid-back." |  |
|  |  | 19.5 |  | Terminated w/ complaints of "Pain in my lower back." | Thumb up grip, steps taken, forward bend at waist and full squat to floor. |
|  | Bilat | 6 lb. | 3min/8reps | "Painful in my low back" |  |
|  |  | 12.5 |  | "Sharp pain in low back." |  |
|  |  | 21.5 lb |  | Terminated w/ complaints of "a lot of sharp pain in my low back." | Overhanded grip, steps taken, forward bend at waist, bull squat at 18" and floor levels. |
| Carry |  | 12 lb | 5min/7reps | "Pressure in low back." |  |
|  |  | 22 lb. |  | "Sharp pain between shoulder blades." |  |
|  |  | 32 lb. |  | Terminated w/ complaints of "bad pain in low back and between shoulder blades." | Sifted away from side weight carried on and shift in upper back towards weighted side." |

11